## THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.:

SUNNY THOMAS,

      Plaintiff,

vs.

MIAMI DADE COUNTY
CLERK OF COURTS,

      Defendants.

## COMPLAINT

1. Plaintiff, SUNNY THOMAS ("Plaintiff"), brings this action against Defendant, MIAMI-DADE COUNTY CLERK OF COURTS ("Defendant"), for discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964, and the Florida Civil Rights Act of 1992 ("FCRA"), and alleges as follows:

2. During all material times, Plaintiff has been an individual above the age of eighteen, a resident of Miami-Dade County, Florida, and is otherwise *sui juris*.

3. During all material times, Defendant conducted business within the State of Florida, and within Miami-Dade County, Florida.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over these Federal claims and State statutory and common law causes of action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Florida Civil Rights Act of 1992 ("FCRA").

5. The venue of this Court over this controversy is proper based on the claims arising in Miami-Dade County, Florida.

1

## ADMINISTRATIVE PREREQUISITES

6. All conditions precedent to bringing this action have occurred.

7. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR").

8. A notification of Right to Sue was received and this Complaint has been filed within ninety (90) days of receipt thereof.

## PARTIES

9. Plaintiff is a citizen and resident of Miami-Dade County, Florida.

10. Defendant is authorized to conduct business in the State of Florida and Miami-Dade County, and is an entity subject to suit under Title VII of the Civil Rights Act of 1964 and the FCRA.

11. Defendant is an employer as defined by the laws under which this action is brought.

12. Defendant has had at least fifteen (15) employees for each working day in at least twenty (20) calendar weeks at all times material to this Complaint.

13. At all times material to this Complaint, Defendant was an employer as that term is defined within Title VII and the FCRA.

14. At all times material to this Complaint, Plaintiff was an employee as that term is defined within Title VII and the FCRA.

## GENERAL ALLEGATIONS

15. Plaintiff is of Indian descent.

16. Plaintiff immigrated to the United States in 1990.

17. Plaintiff currently works as an Information Technology ("IT") professional for Defendant as Systems Support Manager (SSM).

18. Plaintiff was hired by Defendant in or about 2003 to manage the most complex IT System in the County, a paperless Court Case Management System named SPIRIT.

19. SPIRIT is the first paperless Court System implemented in the United States.

20. SPIRIT was jointly developed by Miami-Dade County, the Miami-Dade County Clerk of Courts (COC), and the Administrative of the Courts (AOC) at a cost of 36.5 million dollars.

21. Plaintiff is and has always been professionally and technically qualified to perform his job, having an MS in Information Systems and an MBA in Management, had more than ten (10) years of IT management experience in the Private Sector as an IT Manager and IT Director prior to being hired by the Defendant.

22. Plaintiff graduated with an MS in Information Systems from Florida International University as the best graduate student of the year, in Dean's list, and received special recognition certificates for the same.

23. Plaintiff has successfully managed SPIRIT, increasing productivity and reducing cost.

## PLAINTIFF HAS BEEN DISCRIMINATED AGAINST BY THE DEFENDANT THROUGHOUT HIS EMPLOYMENT

24. Plaintiff's first manager, Mr. Tom James, the CIO of COC, prepared Plaintiff's reclassification to "IT Program Manager" in November 2003, as he gave Plaintiff additional Management roles in SPIRIT necessitating management of technical personnel in three shifts - from 6.00 am to 12 pm midnight covering 18 hours a day.  COC's HR Manager, Ms. Roberson, completed the reclassification paperwork and CIO Tom James and County CIO Judy Zitto approved it.  This was filed with County's HR Department.  However, the implementation was kept pending due to budget constraints, however, Plaintiff was asked to use the new designation SPIRIT Program Manager.  Though Plaintiff kept reminding every year, the continued poor budget situation was cited as a hindrance for the implementation of Plaintiff's reclassification.

3

25. In 2007, another Caucasian manager (Ms. Barbara Parker) in Plaintiff's same job grade was reclassified and was given a salary raise and executive benefits.  At the same time, Plaintiff's reclassification from 2003 remained pending.

26. In 2011 Ms. Laurie Reaves became theAssociate Director and Plaintiff's direct supervisor.  She targeted Plaintiff for elimination from the Division due only to Plaintiff's race/color/national origin by placing Plaintiff in the bumping list while protecting other "non-colored" managers by giving them exemptions.  One of them, Mr. Frank Martinez managed only one person, while Plaintiff managed a dozen technical personnel and the most expensive and sophisticated software application of the County, SPIRIT.  When the Clerk of Court, Mr. Ruvin, was notified of this unfairness, he ordered the reversal of Ms. Reaves' action, thus removing Plaintiff from bumping list.

27. Upon becoming Plaintiff's supervisor, Ms. Reaves held her first meeting with SPIRIT Technical team (the team Plaintiff managed) in Plaintiff's absence.  She waited for Plaintiff to go on vacation to hold this meeting.  Ms. Reaves asked Plaintiff's Assistant supervisor (a non-colored employee) why he did not become the SPIRIT Manager replacing Plaintiff.

28. In 2012 when an Assistant Director position became open in Plaintiff's Division (Technical Service Division of the COC), Plaintiff showed interest as Plaintiff was the most senior (continuous service) and most professionally qualified manager at the time to get the position.  Ms. Reaves called Plaintiff over the phone and told Plaintiff that she wanted to give that position to Mr. Frank Martinez who was managing just one employee after leaving and returning to Plaintiff's Division, and who was the target of two sexual harassment complaints from two female employees at the time.  Moreover, Mr. Martinez was less qualified than Plaintiff for the position.  Ms. Reaves

said she would not promote Plaintiff for that position and even warned Plaintiff not to apply so as not to damage Plaintiff's future chances of promotion.

29. In 2013 having learned that the budget constraints were over and another Caucasian manager (Ms. Barbara Parker) in Plaintiff's same job grade was reclassified in 2007 and given executive benefits, Plaintiff submitted Plaintiff's reclassification paperwork to Ms. Reaves citing two county approved sufficient reasons for reclassification – 1) a succeeding employee doing all the job tasks of the preceding employee is eligible for the job classification of the preceding employee, and 2) that Plaintiff had been supervising another employee with the same pay grade as him.

30. The preceding SPIRIT Managers – Masood Hussaini and Adriene DiPrima – were both Systems Support Managers, a higher job grade than Plaintiff. Plaintiff notified Ms. Reaves that Plaintiff's completed reclassification was still pending from 2003, however, she did not process Plaintiff's reclassification request and refused to respond, in violation of County's Reclassification procedure number 405, as well as a violation of the Collective Bargaining Agreement which applies to Plaintiff as a classified employee. Ms. Reaves also refused to consider Plaintiff's pending reclassification from 2003.

31. In or around December 2014, the Assistant Director position opened up again as Mr. Martinez was promoted to Director, and Plaintiff was next in line for the Asst. Director position as promised by Ms. Reaves in 2012. Upon contacting Ms. Reaves, she gave a lethargic "we will see" response. She kept the position unfilled for one year (first time in the history of the Division). Ms. Reaves was gaining time for a programmer (Mr. Miguel Mukodsi) who was just promoted to a manager recently and was just completing probation to get more experience.

32. In December 2015, Ms. Reaves appointed that junior manager, Mr. Mukodsi, as Asst Director superseding Plaintiff with 11 years of managerial experience. Mr. Mukodsi is a "non-colored"

employee, with no graduate level qualifications or prior IT Director experience like Plaintiff.  This was a surprise to our Divisional employees as this junior manager could not even speak fluent English.  This was a violation of COC-HR's job requirements published requiring four years of managerial experience.

33. When Plaintiff expressed his grievance about this in a formal meeting on 12/23/2015, Mr. Martinez responded "This is Miami, English is not important.  We do not need MS or MBA graduates".   He expressed his detestation about the reclassification grievance the plaintiff  took up with the Clerk of Courts.  Plaintiff was then asked to report to this new Asst. Director.

34. County AO 7-6 specifies that the promotional guidelines dictate "qualification and experience" as the criteria for promotion. When Ms. Reaves was promoted as Asst. Director in 2011 it was claimed to be based on seniority (experience) in the County.  When Mr. Martinez was promoted to Asst. Director in 2012, again years of experience was used as the criteria.  No interviews were held for either of these promotions.  But when the Asst. Director position opened up in 2014, and Plaintiff was the most experienced manager for that position, the norm was not followed.  The position was kept vacant for an year, and then a junior manager with less experience and qualification was promoted, thereby bypassing Plaintiff.

35. When an employee has a death in his/her family it is a policy that the Division Head emails a notification to all employees expressing solidarity and support.  When Plaintiff's brother passed away in May 2015, Ms. Reaves deliberately did not send out this notification, while she or Mr. Martinez sent email notification for all other employees.

36. Since Mr. Martinez became Plaintiff's new Director, Plaintiff took up his reclassification request with him in September 2015.  Mr. Martinez responded: "I see your two points loud and clear, and you do a far better job than Masood and Adrienne.  I will support this but need to concur with Ms.

Reaves."  A week later Mr. Martinez responded stating that Ms. Reaves would not approve the reclassification, and so he could not support Plaintiff's reclassification.

37. Plaintiff then asked to reactivate Plaintiff's pending reclassification from 2003 to which Mr. Martinez responded, "that was before my time".   Plaintiff expressed concern at this unfairness especially because another "non-colored" manager was reclassified in 2007.

38. As due process per County's "Reclassification Procedure 405" was again violated in Plaintiff's 2015 reclassification attempt, Plaintiff addressed his grievance to Mr. Ruvin, the Clerk of Courts. This evoked the involvement of COC HR department who conducted a meeting with Mr. Martinez and Plaintiff.  HR Manager Ms. Roberson was surprised that Plaintiff was managing another employee of the same pay scale.  They asked whether Plaintiff was approving the other employee's leave/vacation and doing the other employee's performance evaluations, which Plaintiff answered in the affirmation to both.  Mr. Martinez stated that reclassifying Plaintiff would make Plaintiff's salary on par with Plaintiff's current boss the Assistant Director, to which Plaintiff responded that when Plaintiff submitted his reclassification requests Plaintiff was reporting to higher positions – CIO, Director, Associate Director all of which are above Assistant Director, and secondly, Plaintiff had been managing another employee of the same pay scale for many years.  HR advised Plaintiff they would investigate Plaintiff's request and mentioned it was a time-consuming protracted process.

39. The HR Manager, Ms. Roberson, also acknowledged that Plaintiff's 2003 reclassification was completed by her, in her own handwriting.  Later Plaintiff realized that acknowledgement was to calm him down as Plaintiff complained about repeated discrimination by management.  For the following three years the management kept telling Plaintiff that his reclassification application was being favorably considered and processed, yet nothing ever materialized.

40. On August 31, 2018, during an IT seminar at a County facility in Overtown, the Assistant Director Miguel Mukodsi told Plaintiff that " It seems COC HR has closed his reclassification file six months ago".  Plaintiff expressed his concerns at not notifying him while communicating the contrary that the processing was in progress, which Plaintiff communicated verbally and in writing. Upon Plaintiff's request, COC HR held a meeting with Mr. Martinez, the Assistant Director Mr. Mukodsi, and Plaintiff during which HR Manager told that Ms. Reaves and Mr. Martinez were aware of the file closing as they wanted it to be closed.

41. They then asked Plaintiff to withdraw Plaintiff's reclassification request.  Plaintiff responded that it was a violation of procedures and insisted that due process should be followed by forwarding the reclassification request to County HR. Thus, it became evident that Ms. Reaves and Mr. Martinez secretly closed the application and deliberately avoided notifying Plaintiff to deny him due process of appeal, by running out the appeal time.

42. In September 2016 the County reclassified all Computer Service Managers (CSM) to the next position above.  However, Ms. Reaves refused to reclassify Plaintiff though Plaintiff was a County employee and Plaintiff's designation was Computer Service Manager.  This again was discrimination, and employees who became CSM even eleven years after Plaintiff, were reclassified above Plaintiff.

43. Plaintiff's management forwarded the reclassification request to County HR as Plaintiff insisted, however, Ms. Reaves lied in writing to County HR that Plaintiff always reported to Assistant Director and reclassification would create conflict in reporting structure.  In fact:  1) Plaintiff had reported to CIO, Director and Associate Director all of which are above Assistant Director, and 2) when Plaintiff submitted Plaintiff's reclassification requests Plaintiff was reporting to these higher positions.

8

44. The reclassification work completed in 2003 was when Plaintiff was reporting to the CIO, and the reclassification request completed in September 2015 was when Plaintiff was reporting to the Director.  However, Ms. Reaves refused to give Plaintiff reclassification and paid extra 'lead worker' compensation in November 2019, for the years Plaintiff managed other employees of the same pay scale as Plaintiff, and transferred that employee from Plaintiff's supervision to County's IT Department.  This is a direct violation of County's Payroll Policy and the Collective Bargaining agreements.

45. Moreover, as of November 2019, when the COC refused Plaintiff's reclassification request the Plaintiff lost four years of financial remuneration which could have been prevented had the COC reclassified Plaintiff on time based on County Procedure 405.

46. Since the COC Computer Service managers started complaining why they were not given the reclassification which the County did in general for all CSMs, Ms. Reaves finally agreed and all CSMs were reclassified in January 2020.  However, Ms. Reaves punished Plaintiff by making Plaintiff's seniority on par with the Junior managers.  In other words, all CSMs reclassified to Systems Support Managers (SSM) have the same seniority now.

47. Layoffs at the COC are based on seniority.  Lower seniority gets laid off first.  All County managers who were reclassified in Sept 2016 have much higher seniority now than Plaintiff, though they became managers years after Plaintiff.

48. Two Caucasian CSMs were reclassified to higher positions in Plaintiff's organization while holding Plaintiff's reclassification in abeyance from 2003 onwards.

49. In the history of COC every CSM has received one,  two or even three promotions in 17 years. Plaintiff is the only CSM who was refused promotion, although Plaintiff is more qualified than all the others.

50. Receiving annual evaluation is the right of a County employee, as per HR policy.  However, Plaintiff was denied annual evaluation.  When Plaintiff was provided an evaluation, most were ranked "outstanding" but were ignored during promotions.

51. Though Plaintiff's division is comprised of approximately 20% "colored employees," none received a managerial promotion while 'non-colored" employees received multiple managerial promotions one after the other

52. Ms. Reaves made racially disparaging remarks to the Plaintiff.  She asked Plaintiff why the streets in India have lots of bicycles and mopeds.  Months later when Plaintiff had a car service situation, Ms. Reaves emailed  Plaintiff bringing up the "moped" situation as a racial epithet.  Plaintiff was also frequently ridiculed for his moustache and hair color. Mr. Martinez even referred to Plaintiff as "Migrated Gandhi."

53. Ms. Reaves discriminated against other "colored" employees too and during recruitment replaced qualified 'colored' candidates with unqualified 'non-colored' candidates.  A number of other colored employees have complained about her discriminatory behavior.

### Additional Discrimination and Retaliation

54. As the Director of the Technical Services Division of the Clerk of Courts was scheduled to retire on June 30, 2021, Plaintiff expressed his interest in the position through emails to the Director, Assistant Director and the Human Resources manager of the Clerk of Courts.

55. Defendant did not acknowledge or reply the Plaintiff's emails regarding his interest in the Director position.  When emails were not replied to, Plaintiff had a discussion with Director Mr. Martinez on February 8, 2021, whereby he requested that Mr. Martinez consider him for promotion as vacancies were coming up.  Mr. Martinez responded, "***do you think we will promote you after you complained to the EEOC.***"  The Plaintiff asked what the plans were to which Mr. Martinez said Mr. Mukodsi would be the Director and Mr. Raul Diaz the Assistant Director. The Plaintiff said

that would be unfair and discriminatory to him as he was more qualified and experienced than both.  Mr. Martinez responded in annoyance ***"do not complain about our system. You are a migrated Gandhi and you should go back to your country if you do not like our system."***

56. When the Director position became vacant on June 30, 2021, Mr. Miguel Mukodsi was appointed as the Director without even providing the Plaintiff a chance to apply for the position, though the Plaintiff is more qualified (both technically and professionally) and more experienced than Mr. Mukodsi.  The Plaintiff had more managerial seniority, as well as eighteen years of managerial experience in the COC, while Mr. Mukodsi had only eight (Mr. Mukosdi was promoted to Computer Services Manager in 2013 from a programmer position).  The Plaintiff's previous experience as IT Director was also not considered while Mr. Mukodsi had no prior Director level experience.

57. Since Mr. Mukodsi was promoted as Director, the Assistant Director position became vacant on July 1, 2021. The Plaintiff wrote to Mr. Mukodsi requesting to grant him that position based on seniority, qualifications, experience and track record. The Plaintiff pointed out the fact that during the last ten years, the Assistant Director position became vacant four times and the following norm was followed.

   a. In 2011 when Assistant Director position became vacant, Ms. Reaves was given the position based on seniority, without interviewing other candidates, though the Plaintiff was also a manager of the same job classification as Ms. Reaves.  Ms. Reaves retired in December 2020, after 35 years of service.

   b. In 2012 when the Assistant Director position became vacant again, Mr. Frank Martinez was given the position based on seniority, without interviewing other candidates, though the Plaintiff was also a manager of the same job classification as Mr. Frank Martinez.  Mr.

Martinez was the target of sexual harassment complaint by two female employees and had left the organization and returned after a few years. Still he was promoted by Ms. Reaves. Mr. Martinez retired in June 2021 after 35 years of service.

c. In or around January 2015 when it became vacant again, the Plaintiff was next in seniority eligible for the position, but Ms. Reaves kept the position unfilled and eventually gave the position to a junior manager, Mr. Mukodsi, in retaliation against the grievance the Plaintiff filed with the Clerk of Courts regarding not processing his reclassification requests and the violation of County procedure on reclassification.

d. When the Asst. Director position became vacant again on July 1, 2021, due to Mr. Mukodsi's promotion, the Plaintiff requested that he be granted that position based on seniority just like Ms. Reaves and Mr. Martinez in the past. Mr. Mukodsi replied that appointing Assistant Director was above his authority. As such, the Plaintiff forwarded his written request to the Chief of Staff of COC for which the Plaintiff did not receive any reply. However, he called Plaintiff after the position was given to Mr. Raul Diaz and verbally stated that his policy was to support management irrespective of seniority considerations.

58. Plaintiff was discriminated and retaliated against by the Defendant as Defendant failed to follow the same procedures applied when Ms. Reaves and Mr. Martinez were promoted.

59. Miami Dade County's Administrative Order number 7-6 (AO 7-6) promoting Equal Employment Opportunity, issued under the authority of Section 4.02 of the Metropolitan Dade County Charter states that" The policy of Dade County is to foster, maintain, and promote equal employment opportunity. The County will select candidates for employment on the basis of candidates' qualifications for the job. Candidates for promotion are chosen on the basis of existing or

forecasted job openings and on their qualifications and work record". This policy has been repeatedly violated in the case of the Plaintiff by promoting less qualified and less experienced candidates. Denying the Plaintiff an opportunity to apply for the Director position is a flagrant violation of AO 7-6.

60. Persons who became managers ten years after Plaintiff, have been promoted above Plaintiff and made Plaintiff's superiors. Candidates whom the Plaintiff interviewed in the recruitment process have been promoted on par with him and above him, to make the Plaintiff humiliated, frustrated and demoralized.

61. Nineteen (19) managerial promotions occurred in the Technical Services Division (TSD) of COC during the last twenty (20) years. All 19 promotions were given to Caucasian or Hispanic persons though TSD has about 20% colored (African American, AAPI) employees.

62. There were three "double promotions" (bypassing the immediate higher level such as from junior management to senior management bypassing middle management) in TSD during the last three years. All three double promotions were given to Caucasian or White Hispanic managers.

63. The same non-colored managers were given multiple promotions in a row, while Plaintiff did not receive any promotion in Nineteen (19) years. Some managers who received promotions did not even have the published job requirements.

64. The Plaintiff is the middle level manager who won most National and Professional awards for the technologies he managed in the COC. Yet, he was denied promotion.

65. On July 12, 2021, Mr. Mukodsi asked the Plaintiff to vacate his office space stating that it was needed for other employees moving in due to a building emergency. The Plaintiff had an office during the last eighteen years, and he had to vacate his office the following day. The Plaintiff found some of his personal belongings and prayer book in a trash bag on the floor. Though the Plaintiff

was the most senior manager, other junior managers, Mr. Raul Diaz and Ms. Battle, were allowed

to retain their offices. This discriminatory action was in retaliation to Plaintiff's EEOC complaint.

66. When the building emergency was resolved, the manager who occupied the Plaintiff's office went

back.  However, Plaintiff was not given back his office and instead he was asked to work in an

open office in another building, seated among entry level programmers, while most managers

including a new manager hired in 2022 had their dedicated office, furniture and computer

equipments.  The Plaintiff was asked to use a desk, chair, computer, keyboard, mouse and phone

on a rotational basis assigned for a day all of which would be assigned to another employee the

next day.  This clusterd open office shared space with Public and did not comply with Miami Dade

County's Covid-19 policy guidelines.   Though the Plaintiff communicated his health risk concerns

with HR and senior management requesting allocation of secure office spaces available on the

same floor, it was not granted. There are twenty five secure office spaces available (including three

managers offices) more than half of which are unoccupied on any given day.This is a retaliation

action to humiliate and frustrate the Plaintiff to make him resign.

67. The repeated discrimination and retaliation against the Plaintiff in reclassification and promotions

are based on color, race and national origin evident by verbal epithets used by Ms. Reaves and Mr.

Martinez such as "You Brownie", "moped country", "moped cost saver", "go back to your

country", and "migrated Gandhi".

68. Defendant did not treat its other employees outside of Plaintiff's protected class in the same

discriminatory manner as it treated the Plaintiff.

69. Plaintiff has engaged the services of legal counsel and is obligated to pay legal counsel their fees

incurred in the prosecution of this action.

## <u>COUNT I DISCRIMINATION BASED ON RACE</u>
## <u>IN VIOLATION OF TITLE VII</u>

70. Plaintiff repeats and realleges the allegations made in paragraph 1 through 69 above.

71. The foregoing facts and circumstances demonstrate that Defendant, and its agents, have violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against Plaintiff with respect to the conditions of Plaintiff's employment because of his race.

72. Defendant and its agents and employees, knew, or should have known, that the above-referenced actions were discriminatory and violated Title VII of the Civil Rights Act of 1964, as amended. Nevertheless, Defendant and its agents acted willfully, intentionally, and in reckless disregard for the rights of Plaintiff.

73. As a direct and proximate result of the actions of Defendant and its agents, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, humiliation, and embarrassment. Furthermore, Plaintiff has and will continue to suffer lost wages and diminished retirement benefits.

74. Moreover, Plaintiff has suffered a diminished ability to earn a living and a diminished capacity to enjoy his life. Additionally, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

WHEREFORE, Plaintiff demands damages for lost wages and benefits, back pay, front pay, damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, punitive damages, interest – including pre-judgment interest on lost wages, costs and attorney's fees, and such other relief as this Court deems appropriate.

## COUNT II DISCRIMINATION BASED ON RACE
## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

75. Plaintiff repeats and realleges his allegations made in paragraph 1 through 69 above.

76. The foregoing facts and circumstances demonstrate that Defendant and its agents have violated the Florida Civil Rights Act of 1992 by discriminating against Plaintiff with respect to the "conditions" of Plaintiff's employment because of his race.

77. Defendant and its agents knew or should have known that the above-referenced actions were discriminatory and violated the Florida Civil Rights Act of 1992. Nevertheless, Defendant and its agents acted willfully and intentionally and in reckless disregard for the rights of Plaintiff.

78. As a direct and proximate result of the actions of Defendant and its agents, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, humiliation, and embarrassment. Furthermore, Plaintiff has and will continue to suffer lost wages. Moreover, Plaintiff has suffered a diminished ability to earn a living and a diminished capacity to enjoy his life. Additionally, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

WHEREFORE, Plaintiff demands damages for lost wages and benefits, back pay, front pay, damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, punitive damages, interest – including pre-judgment interest on lost wages, costs and attorney's fees, and such other relief as this Court deems appropriate.

## COUNT III DISCRIMINATION BASED ON COLOR
## IN VIOLATION OF TITLE VII

79. Plaintiff repeats and realleges the allegations made in paragraph 1 through 69 above.

16

80. The foregoing facts and circumstances demonstrate that Defendant, and its agents, have violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against Plaintiff with respect to the conditions of Plaintiff's employment because of his color.

81. Defendant and its agents and employees, knew, or should have known, that the above-referenced actions were discriminatory and violated Title VII of the Civil Rights Act of 1964, as amended. Nevertheless, Defendant and its agents acted willfully, intentionally, and in reckless disregard for the rights of Plaintiff.

82. As a direct and proximate result of the actions of Defendant and its agents, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, humiliation, and embarrassment. Furthermore, Plaintiff has and will continue to suffer lost wages.

83. Moreover, Plaintiff has suffered a diminished ability to earn a living and a diminished capacity to enjoy his life. Additionally, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

WHEREFORE, Plaintiff demands damages for lost wages and benefits, back pay, front pay, damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, punitive damages, interest – including pre-judgment interest on lost wages, costs and attorney's fees, and such other relief as this Court deems appropriate.

## COUNT IV DISCRIMINATION BASED ON COLOR
## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

84. Plaintiff repeats and realleges his allegations made in paragraph 1 through 69 above.

85. The foregoing facts and circumstances demonstrate that Defendant and its agents have violated the Florida Civil Rights Act of 1992 by discriminating against Plaintiff with respect to the "conditions" of Plaintiff's employment because of his color.

86. Defendant and its agents knew or should have known that the above-referenced actions were discriminatory and violated the Florida Civil Rights Act of 1992. Nevertheless, Defendant and its agents acted willfully and intentionally and in reckless disregard for the rights of Plaintiff.

87. As a direct and proximate result of the actions of Defendant and its agents, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, humiliation, and embarrassment. Furthermore, Plaintiff has and will continue to suffer lost wages. Moreover, Plaintiff has suffered a diminished ability to earn a living and a diminished capacity to enjoy his life. Additionally, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

WHEREFORE, Plaintiff demands damages for lost wages and benefits, back pay, front pay, damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, punitive damages, interest – including pre-judgment interest on lost wages, costs and attorney's fees, and such other relief as this Court deems appropriate.

## COUNT V DISCRIMINATION BASED ON NATIONAL ORIGIN IN VIOLATION OF TITLE VII

88. Plaintiff repeats and realleges the allegations made in paragraph 1 through 69 above.

89. The foregoing facts and circumstances demonstrate that Defendant, and its agents, have violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against Plaintiff with respect to the conditions of Plaintiff's employment because of his national origin.

90. Defendant and its agents and employees, knew, or should have known, that the above-referenced actions were discriminatory and violated Title VII of the Civil Rights Act of 1964, as amended. Nevertheless, Defendant and its agents acted willfully, intentionally, and in reckless disregard for the rights of Plaintiff.

91. As a direct and proximate result of the actions of Defendant and its agents, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, humiliation, and embarrassment. Furthermore, Plaintiff has and will continue to suffer lost wages.

92. Moreover, Plaintiff has suffered a diminished ability to earn a living and a diminished capacity to enjoy his life. Additionally, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

WHEREFORE, Plaintiff demands damages for lost wages and benefits, back pay, front pay, damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, punitive damages, interest – including pre-judgment interest on lost wages, costs and attorney's fees, and such other relief as this Court deems appropriate.

## COUNT VI DISCRIMINATION BASED ON NATIONAL ORIGIN IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

93. Plaintiff repeats and realleges his allegations made in paragraph 1 through 69 above.

94. The foregoing facts and circumstances demonstrate that Defendant and its agents have violated the Florida Civil Rights Act of 1992 by discriminating against Plaintiff with respect to the "conditions" of Plaintiff's employment because of his national origin.

95. Defendant and its agents knew or should have known that the above-referenced actions were discriminatory and violated the Florida Civil Rights Act of 1992. Nevertheless, Defendant and its agents acted willfully and intentionally and in reckless disregard for the rights of Plaintiff.

96. As a direct and proximate result of the actions of Defendant and its agents, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, humiliation, and embarrassment. Furthermore, Plaintiff has and will continue to suffer lost wages. Moreover, Plaintiff has suffered a diminished ability to earn a living and a diminished capacity to enjoy his life. Additionally,

Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

WHEREFORE, Plaintiff demands damages for lost wages and benefits, back pay, front pay, damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, punitive damages, interest – including pre-judgment interest on lost wages, costs and attorney's fees, and such other relief as this Court deems appropriate.

## COUNT VII – RETALIATION IN VIOLATION OF TITLE VII

97. Plaintiff repeats and realleges his allegations made in paragraph 1 through 69 above.

98. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000(e)-2(a), *et seq*., prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions and privileges of one's employment, based upon an employee's complaint of employment discrimination.

99. An employee's opposition to an employer's practice, based on the employee's reasonable belief that the employer has engaged in an unlawful employment practice, suffices to show that the employee engaged in protected activity for purposes of Title VII retaliation claim. *42 U.S.C.A. § 2000e-5*.

An employee's opposition to an employer's discriminatory practices will support claim for retaliation under Title VII. *Id*.

100.       Plaintiff repeatedly complained about Defendant's failure to promote him due to his membership in a protected class.

101.       In response to Plaintiff exercising protected activity under Title VII, Plaintiff was retaliated against by the Defendant.

102.     The Defendant treated other employees who did not complaint about Defendant's discriminatory activities more favorably than the Plaintiff.

103.     Defendant deliberately and intentionally retaliated against the Plaintiff as to the terms or conditions of his employment due to Plaintiff engaging in protected activity under Title VII.

104.     As a direct and proximate result of the wrongful acts of the Defendant, Plaintiff has suffered damages and will continue to suffer damages from the loss of past and present wages, loss of self-esteem, emotional harm, psychological distress humiliation, loss of enjoyment of life, embarrassment, and inconvenience.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the Defendant, and award Plaintiff damages for lost wages and benefits, back pay, front pay (or reinstatement), damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, interest -- including pre-judgment interest on lost wages, costs and attorney's fees, and such other relief as this Court deems appropriate.

## COUNT VIII – RETALIATION VIOLATION OF FLORIDA CIVIL RIGHTS ACT

105.     Plaintiff repeats and realleges his allegations made in paragraph 1 through 69 above.

106.     The FCRA prohibits an employer from making employment decisions, or from taking any personnel action, affecting the terms, conditions and privileges of one's employment, based upon an employee's complaint of employment discrimination.

107.     An employee's opposition to an employer's practice, based on the employee's reasonable belief that the employer has engaged in an unlawful employment practice, suffices to show that the employee engaged in protected activity for purposes of an FCRA retaliation claim.

108.     An employee's opposition to an employer's discriminatory practices will support claim for retaliation under the FCRA

109.     Plaintiff repeatedly complained about Defendant's failure to promote him due to his membership in a protected class.

110.     In response to Plaintiff exercising protected activity under the FCRA, Plaintiff was retaliated against by the Defendant.

111.     The Defendant treated other employees who did not complaint about Defendant's discriminatory activities more favorably than the plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against the Defendant, and award Plaintiff damages for lost wages and benefits, back pay, front pay (or reinstatement), damages for humiliation, loss of capacity to enjoy life, mental and emotional distress, physical discomfort, compensatory damages, interest -- including pre-judgment interest on lost wages, costs and attorney's fees, and such other relief as this Court deems appropriate.

## <u>JURY DEMAND</u>

112.     Plaintiff demands a trial by jury on all issues so triable.


Dated:  July 28, 2022                            Respectfully submitted,

                                                 s/Jonathan S. Minick
                                                 Jonathan S. Minick, Esq.
                                                 FBN:  88743
                                                 E-mail:  jminick@jsmlawpa.com
                                                 Jonathan S. Minick, P.A.
                                                 169 E. Flagler St., Suite 1600
                                                 Miami, Florida 33131
                                                 Phone: (786) 441-8909
                                                 Facsimile: (786) 523-0610
                                                 Counsel for Plaintiff